IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEBORRAH SKAGGS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:16-CV-00227-CAN |
| | § | |
| v. | § | |
| | § | |
| VAN ALSTYNE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Van Alstyne Independent School District's ("Defendant") Motion for Summary Judgment ("Motion for Summary Judgment") [Dkt. 16]. After reviewing the Motion for Summary Judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment [Dkt. 20], Defendant's Reply Brief in Support of Its Motion for Summary Judgment [Dkt. 21], and all other relevant filings, the Court finds that Defendant's Motion for Summary Judgment [Dkt. 16] should be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff Deborrah Skaggs ("Plaintiff") began work at Van Alstyne Independent School District in 1998 as a special education teacher for the middle school (teaching sixth, seventh, and eighth grade) [Dkts. 16 at 5; 17-3 at 53].  Plaintiff subsequently moved to an English Language Arts position at Van Alstyne Middle School, which is where she remained until the end of her employment with Defendant [Dkts. 16 at 5; 17-3 at 53].  As an English Language Arts teacher, "one of Plaintiff's duties included preparing her students for the writing portion of the State of

Texas Assessments of Academic Readiness (STAAR) test[,]" which consists in relevant part of "a 'personal narrative section' and an 'expository section'" [Dkts. 16 at 6; 17-3 at 44].  The State implemented this exam for the first time during the 2011-2012 school year [Dkts. 16 at 6; 17-3 at 44].  The Parties sharply diverge regarding the statistical analysis of Plaintiff's students' performance on the STAAR test (as more fully discussed *infra*).  Prior to implementation of the STAAR test, Plaintiff's annual appraisals were generally positive [Dkt. 20-1 at 206-58; *cf.* Dkt. 17 at 8-12 (Plaintiff's 2008-2009 appraisal indicating she needed to change some of her teaching methods)].  Principal Ryan Coleman ("Coleman"), who began work as the Van Alstyne Middle School principal during the 2008-2009 school year, performed Plaintiff's Observation Summary and Summative Annual Appraisal during the 2008-2009, 2011-2012, 2012-2013, 2013-2014 school years [Dkts. 17 at 12, 40, 64-65; 17-1 at 21], as well as Plaintiff's October 2014 Observational Summary [Dkt. 17-1 at 54].

### 2011-2012 School Year

Plaintiff's annual appraisal for the 2011-2012 school year, which was compiled prior to Defendant's receipt of Plaintiff's students' STAAR scores for the year, indicated Plaintiff performed below expectations in the areas of "Professional Communication" and "Compliance with Policies, Operating Procedures, and Requirements" but that Plaintiff was proficient at "Active, Successful Student Participating in the Learning Process," "Learner-Centered Instruction," "Evaluation and Feedback on Student Progress," and "Management of Student Discipline, Instructional Strategies, Time, and Materials" and exceeded expectations at "Professional Development" and "Improvement of Academic Performance of All Students on the Campus" [Dkt. 17 at 34-40 (noting specifically that Plaintiff needed to work on "designing engaging lesson plans that require students to get actively involved")].

Subsequent to Plaintiff's annual appraisal, Coleman approached Plaintiff in May 2012 and inquired regarding Plaintiff's plans to retire in the coming year [Dkt. 17-3 at 45].  Plaintiff testified their conversation went as follows:

> [H]e approached me in my room.  He came back to my desk, and he pulled up a chair, and he sat down and he asked me about retirement.  He asked me—he said, "Well, I don't know how much it is, but how much would your pension be if you retired?"  He encouraged me to retire and spend more time with my grandkids.  And I explained to him at that time that I was my sole supporter since my husband died, and I could not afford to retire.

[Dkt. 20-3 at 260].  Also in May 2012, Defendant received Plaintiff's students' STAAR scores [Dkts. 17 at 13-15, 22-23; 17-3 at 45].  Defendant maintains these scores fell below the state average on both the personal narrative and expository sections of the exam that year [Dkts. 17 at 13-15, 22-23; 17-3 at 45].  Plaintiff argues to the contrary that "Plaintiff's students achieved a mean score of 3.96 compared to the state mean score of 3.94 on the expository composition [and] [o]n the narrative composition, Plaintiff's students' mean of 4.6 is comparable to the state mean of 4.8; and, 85% of Plaintiff's student scored at or better than the mode of 4, equaling the performance of students state-wide" [Dkt. 20 at 4].

*2012-2013 School Year*

Coleman met with Plaintiff in September 2012 to discuss her students' scores from the prior school year.  Defendant asserts that Coleman "believed the results warranted a Growth Plan," but that he attempted to avoid placing Plaintiff on such Plan by informally providing her other opportunities to develop her teaching methods [Dkt. 17-3 at 45].  When Plaintiff failed to comply with Coleman's informal directives, Coleman placed Plaintiff on a Growth Plan (beginning October 22, 2012, and to be completed March 1, 2013) after seeking Plaintiff's input regarding the plans goals and tools [Dkt. 17 at 40-46].  Plaintiff received her annual appraisal for the 2012-2013 school year on April 28, 2013 [Dkt 17 at 56-65].  While generally positive, the

appraisal indicated Plaintiff had "a long way to go to get to where [the school] need[ed] [her] to be" and that Plaintiff and her students "ha[d] a lot of ground to make up before" STAAR testing [Dkt. 17 at 56-65].   According to Defendant, Plaintiff's students scored better on the 2013 STAAR test, exceeding the state average on the personal narrative section, but were below average on the expository section [Dkt. 17 at 16-17, 22-23; 17-3 at 46].   Plaintiff asserts her "students achieved a mean score of 5.27 compared to the state mean of 4.84 on the personal narrative composition . . . [and that while her] students averaged a 3.94 compared to the state average of 4.35 on the expository composition, a higher percentage of [her] students (80%) scored at or above the mode of 4 than was achieved statewide (76%)" [Dkt. 20 at 5].

### *2013-2014 School Year*

In February 2014, Coleman decided to place Plaintiff on a second Growth Plan [Dkt. 17 at 68-69], which focused largely on improving the perceived "lack of student progress as writers and lack of student engagement" as well as the perceived "insufficient daily use of learner-centered strategies and critical thinking opportunities" in Plaintiff's classroom [Dkt. 17-1 at 5-7]. This Growth Plan was to run from April 28, 2014, to May 30, 2014, though Plaintiff and Coleman did not sign it until May 2, 2014.  *See id.*  Coleman met with Plaintiff in May 2014 to discuss this second Growth Plan [Dkt. 17-3 at 46].   Plaintiff testified the meeting went as follows:

> He just sat back in his chair, and he said, "I have an idea for you—that I have two positions open for next year, and I want you to think about or consider taking one of the positions, and I have an aide position I'd like for you to fill."  Would I consider that, and I said no.  And then at—towards the end of the meeting, he asked me if I had reconsidered taking the aide's position.  And I said "No, I can't afford it."  And then he made the statement sometime during that meeting that it would be a less stressful job and it would give me more time at home to spend with my family.

*Id.* at 63.  Later that month, Defendant received Plaintiff's students' STAAR scores for the 2013-2014 school year, which Defendant indicates were below-average on both the personal narrative and expository sections [Dkt. 17-1 at 24-25].  Plaintiff claims this interpretation "manipulate[es] the data" and asserts her "students['] mean score of 4.55 on the personal narrative composition is comparable to the state mean of 4.82 [and that] . . . a higher percentage of [her] students scored at or above the mode of 4 on the personal narrative composition, than did students state-wide [Dkt. 20 at 6].  Regarding the expository section, Plaintiff does not contest her students' scores fell below the statewide average.

### *2014-2015 School Year*

Plaintiff failed to meet many of the requirements of her second Growth Plan and throughout the 2014-2015 school year met frequently with Coleman regarding her perceived deficiencies in the classroom and also about her failure to comply with the Growth Plan [*see* Dkt. 16 at 13-15].  Plaintiff testified that, throughout her tenure and at such meetings, Coleman would repeatedly refer to her teaching methods as "outdated" or "old," which Plaintiff understood as discriminatory remarks directed at her because of her age [*e.g.*, Dkt. 17-3 at 63].  Since as early as the 2011-2012 School Year, Plaintiff complained to Michelle Wichers ("Wichers"), another teacher at Van Alstyne Middle School, about these comments and Plaintiff's placement on growth plans, which Plaintiff perceived to be a result of her age [Dkt. 17-3 at 56, 63, 68].

In February 2015, Coleman told Plaintiff he intended to recommend to Superintendent John Spies ("Spies"), who began working as the Van Alstyne Independent School District's superintendent in 2011, that Plaintiff's teaching contract be non-renewed for the 2015-2016

school year in light of her perceived deficiencies [Dkt. 17-3 at 47, 75]. Plaintiff testified that, at

that time, Coleman suggested she could retire or resign in lieu of facing termination. *Id.* at 75.

Relying on Coleman's recommendation, Spies recommended non-renewal of Plaintiff's

teaching contract to the Board of Trustees ("Board"); on March 20, 2015, Spies provided

Plaintiff notice of his recommendation [Dkt. 17 at 5].[1] The Board held a non-renewal hearing on

April 27, 2015 [Dkts. 17-2 at 38-71; 17-3 at 1-40]. At hearing, Plaintiff's counsel cross-

examined Defendant's witnesses, Coleman and Spies, but did not present additional witnesses or

testimony. *See id.* After Defendant's presentation and Plaintiff's cross-examination, the Board

moved to non-renew Plaintiff's contract; the motion passed unanimously, seven to zero [Dkts. 16

at 16; 17-3 at 39]. The Board cited the following reasons for non-renewing Plaintiff's teaching

contract in its Findings of Fact and Conclusions of Law:

- Plaintiff "failed to remediate her performance deficiencies as identified in her [appraisals]";
- Plaintiff "failed to remediate performance deficiencies as identified in her 2012 and 2014-2015 Growth Plans";
- Plaintiff "failed to consistently follow legitimate directives from her supervisor to meet all deadlines; tutor struggling students; provide engaging lessons; provide adequate feedback to students; to turn in tutoring, parent logs, and lesson plans on time; to create lesson plans with the requested information; request that her student complete bi-weekly STAAR-format compositions; and increase the amount of student critical thinking, [all of] which constitute[s] a reason for nonrenewal";
- Plaintiff's "inefficien[cy] and incompeten[ce] in the performance of her duties";
- Plaintiff's inability to "measure success by the progress of each student . . .";
- Plaintiff's failure to "cooperate with parents and others . . ."; and
- Plaintiff's "students' inadequate STAAR testing results for the past three years, [and her] students' [concomitant] . . . significant lack of progress[.]"

---

[1] Reading the record in a light most favorable to Plaintiff, Spies appears to have relied wholly upon Coleman's recommendation, which is based, at least in part, on Plaintiff's students' STAAR scores and Plaintiff's annual appraisals from 2011 through 2014. Spies indicates he "[is] familiar with and ha[s] personal knowledge regarding Plaintiff . . . and her employment with [Defendant]" but notes his recommendation to non-renew Plaintiff's contract "was based on the information and documentation presented by . . . Coleman" [Dkt. 17 at 6]. Plaintiff testified she spoke with Spies "[w]hen he would visit the school" but also admits Spies never said anything to her about her age and that she had no personal knowledge of Spies' involvement in Coleman's decision to place her on growth plans [Dkt. 17-3 at 62, 68].

[Dkt. 17-2 at 34-35, as modified by Dkt. 17-3 at 37-38].  Plaintiff was sixty-two years of age at the time the non-renewal became effective [Dkt. 17-3 at 41].

Plaintiff filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division on August 12, 2015, asserting the instant claims and others before that agency. *Id.* at 41-42.  Plaintiff received her right to sue letter on February 4, 2016 [Dkt. 1 at 6].  Plaintiff filed this suit on April 1, 2016, alleging age discrimination, retaliation, and hostile work environment[2] under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA").  *Id. passim.*  Defendant filed its Motion for Summary Judgment on September 28, 2016 [Dkt. 16].  Plaintiff filed her Response on November 3, 2016 [Dkt. 20], and Defendant filed its Reply on November 9, 2016 [Dkt. 21].

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson,* 477 U.S. at 248.

---

[2] The Court notes Plaintiff alleged during deposition that she "was subject to a hostile work environment"—in response to Defendant's questioning—of various experiences she had with Coleman in support of this claim [*see, e.g.*, Dkts. 1 at 3; 17-3 at 59], but that Plaintiff neither alleges the elements of such a claim in her Complaint [*see generally* Dkt. 1] nor argues this claim in response to Defendant's Motion for Summary Judgment [*see generally* Dkt. 20].  Notwithstanding, the Court evaluates this claim *infra* for purposes of completeness.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).  The nonmovant must adduce affirmative evidence.  *Anderson*, 477 U.S. at 257.  The Court need only consider the record materials actually cited by the parties, though the Court may consider the entire record.  FED. R. CIV. P. 56(c)(3).

## ANALYSIS

In this case, Plaintiff brings age-related discrimination, retaliation, and hostile work environment claims under the ADEA and the TCHRA against Defendant [Dkt. 1 at 6-8].[3] Plaintiff seeks back pay and, if reinstatement "is not feasible, front pay with respect to all pay

---

[3] In her charge of discrimination, filed on August 15, 2015, Plaintiff alleged Defendant subjected her to sex, religious, age, and disability discrimination, as well as retaliation [Dkt. 17-3 at 41].  Plaintiff did not "check" or otherwise indicate that the alleged discrimination or retaliation constituted "continuing action," nor did she allege Defendant subjected her to a hostile work environment.  *See id.*  Moreover, Plaintiff carries only her age discrimination and her retaliation claims through to the instant case: she does not allege sex, religious, or disability discrimination before this Court [*see, e.g.*, Dkt. 1 at 6-8].  At deposition, however, Plaintiff mentioned she "was being written up for parts of my growth plan that I could not complete either because of my injury or because it could not be done within the constraints of the time period given to me to complete them" [*e.g.*, Dkt. 17-3 at 76, 81].  Plaintiff also mentioned she suffered an on-the-job injury which limited her ability to write and that in turn limited her ability to meet certain growth plan requirements [*see id.* at 88; Dkt. 20-3 at 268].  The Court considers such statements in the context of Plaintiff's age discrimination claims but notes again that Plaintiff raises no independent claims of disability, sex, or religious discrimination here.

and benefits Plaintiff would have received but for termination[,]" as well as actual, punitive, mental anguish, other compensatory, and liquidated damages, pre- and post-judgment interest, attorney's fees and costs, and injunctive and equitable relief. *Id.* at 8-9.   Defendant contends Plaintiff's claims should be dismissed because (1) each claim is, in part, time-barred; (2) Plaintiff fails to raise a genuine issue of material fact as to age discrimination; (3) Plaintiff fails to raise a genuine issue of material fact as to retaliation; (4) Plaintiff fails to raise a genuine issue of material fact as to the alleged hostile work environment; and (5) Plaintiff failed to mitigate her damages following non-renewal of her contract [Dkts. 16; 21].

## I.       *Time-Barred*

Before turning to the merits of Plaintiff's ADEA and TCHRA discrimination, retaliation, and hostile work environment claims, the Court addresses Defendant's preliminary argument that Plaintiff's claims related to incidents arising before October 16, 2014 (ADEA), and February 13, 2015 (TCHRA), respectively, are time-barred [Dkt. 16].   Defendant further contends that the "continuing violation" doctrine cannot be applied to discrimination or retaliation claims at all and that it does not apply to any hostile work environment claims asserted by Plaintiff in this case. *Id.*   In support of its position, Defendant points to an October/November 2013 conference between Plaintiff and her counsel during which Plaintiff purportedly told her counsel she had experienced discrimination. *Id.*   Plaintiff argues in response that the continuing violation doctrine (or some equitable modification doctrine) does apply to each of her claims [Dkt. 20].

The ADEA bars an employee's unlawful employment practice claim if the employee fails to file a charge with the appropriate administrative agency within 300 days of when the alleged practice "occurred."   29 U.S.C. § 626(d)(1); *cf. Burrell v. Crown Cent. Petroleum, Inc.*, 255

F. Supp. 2d 591, 604 (E.D. Tex. 2003) (noting under a similar provision of Title VII that a plaintiff has 300, rather than 180, days in which to bring a claim in states "that provide[] a state or local administrative mechanism to address [such] complaints . . ."). The TCHRA bars claims made outside the more abbreviated 180-day period following the alleged unlawful employment action. TEX. LAB. CODE ANN. § 21.021.

Here, neither party disputes that Plaintiff filed her charge of discrimination (alleging Defendant discriminated against her as early as 2011 and at the latest on April, 27, 2015, the date of her nonrenewal hearing) on August 12, 2015 [*see* Dkt. 17-3 at 41-42]. As a result, unless Plaintiff demonstrates the applicability of a tolling doctrine (such as the continuing violation doctrine discussed *infra*), Plaintiff's ADEA claims relating to any alleged unlawful employment actions that occurred on or before October 16, 2014, would be time-barred, *see* 29 U.S.C. § 626(d)(1), as would her TCHRA claims relating to the same on or before February 13, 2015, *see* TEX. LAB. CODE ANN. § 21.021.

In the Fifth Circuit, a plaintiff has at least two methods of hurdling the aforementioned limitations barriers: (1) the "continuing violation" doctrine and (2) equitable modification doctrine. *See, e.g.*, *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 851-52, 860 (S.D. Tex. 2010) (evaluating plaintiff's claims under both doctrines and noting inconsistencies between Fifth Circuit panels regarding the extent of each doctrine's applicability). The Court considers each in turn.

### A.    *Continuing Violation*

#### 1.    *Discrimination and Retaliation*

The United States Supreme Court has made clear that the continuing violation doctrine does not apply to discrimination and/or retaliation claims. *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 110-21 (2002).   Indeed, in expressly rejecting the Ninth Circuit's theory of "serial violations" under the discrimination and/or retaliation statutes, the Supreme Court found that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"   *Id.* at 114.   The Court drew a distinction between a discriminatory and/or retaliatory action, which "'occur[s]' on the day that it 'happen[s,]'"and the creation or perpetuation of a hostile work environment, which "occurs over a series of days or perhaps [even] years . . . ."   *Id.* at 110, 115.   Accordingly, with respect to "prior discrete discriminatory [or retaliatory] acts [that] are untimely filed[,]" the Court found the continuing violation doctrine inapplicable: claims raised on the basis of such actions simply are "no longer actionable" when untimely filed.   *Id.* at 114-15.   Thus, absent equitable modification, Plaintiff's discrimination and retaliation claims related to incidents that occurred before October 16, 2014 (ADEA) or February 13, 2015 (TCHRA) are time-barred.

## 2.      *Hostile Work Environment*

Where an employee raises a hostile work environment claim, however, the continuing violation doctrine may apply.   *Id.* at 115-21.   The *Morgan* Court noted that, in contrast to a claim of discrete discrimination or retaliation, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"   *Id.* at 117.   The Court explained that the "very nature" of hostile work environment claims makes them amenable to the continuing violation doctrine:

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days

"after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.

*Id.* at 116-18.  Accordingly, an "employee need only file a charge within [the statutory period] of any act that is part of the hostile work environment."  *Id.* at 118.

Since *Morgan*, courts in the Fifth Circuit have continued to consider three factors in determining whether the continuing violation doctrine applies in any given case: (1) "subject matter"—"[d]o the alleged facts involve the same type of discrimination, tending to connect them in a continuing violation?"; (2) "frequency"—"[a]re the alleged acts recurring . . . or more in the nature of an isolated . . . employment decision?"; and (3) "permanence"—at what point should the violation have "trigger[ed] an employee's awareness and duty to assert his or her rights . . . ?"  *Gallentine v. Hous. Auth. of City of Port Arthur*, 919 F. Supp. 2d 787, 801-02 (E.D. Tex. 2013) (quoting *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)); *see also Lopez*, 684 F. Supp. 2d at 861 (outlining these three factors).  Where the "pre-and post-limitations period incidents involved the same type of [discrimination] and were perpetrated by the same manager," the subject matter factor generally is satisfied.  *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009).  And the incidents are sufficiently frequent when "continuing"—i.e., where the employer engages in no "intervening [remedial] action" that would "sever the prior actions from those that came after . . . ."  *Lopez*, 684 F. Supp. 2d at 861 & n.1. Respecting permanence, "'the focus is on what incidents or events, in fairness and logic, should have placed the average lay person on notice that her rights have been violated.'"  *See id.* at 861 (quoting *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985)).  "Basically, permanence is an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act. . . .  If a plaintiff knows or with the exercise of reasonable diligence would

have known that she suffered from discrimination, she may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Gallentine*, 919 F. Supp. 2d at 802 (internal quotations omitted).  The three factors aim primarily "to 'honor [the statute's] remedial purpose without negating the particular purpose of the [timely] filing requirement.'"  *Lopez*, 684 F. Supp. 2d at 861 (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (citations and internal quotations omitted)).

In applying the three-factor test, the Court finds the continuing violation doctrine applies to Plaintiff's hostile work environment claim, to the extent she has and/or asserts one.  As to the frequency and subject matter factors, Plaintiff alleges Defendant began harassing her in early 2012—when Coleman first approached her about retirement—and continued to do so through "increasingly onerous" growth plans, "increasingly critical" annual appraisals, and remarks about her "outdated" and "old" teaching methods until the non-renewal of her employment contract in April 2015 [Dkts. 1 at 3-5; 20-3 at 259-61; *see also* Dkt. 17-3 at 45-46].  As to permanence, although Plaintiff testified she told her counsel of the alleged discrimination in 2013 [Dkt. 17-3 at 68] and Defendant relied on this testimony in arguing for summary judgment, Plaintiff's counsel clarified in a November 3, 2016 affidavit that "[t]he informal conversation [between Plaintiff and counsel] actually took place in the Fall of 2014, [and] did not involve any discussion of age discrimination, [but rather] was centered on [other subjects]" [Dkt. 20-3 at 268-69].  Otherwise, Plaintiff only ever discussed what she perceived as age-based discrimination with her colleague, Wichers, in apparently informal conversation [*see, e.g.*, Dkt. 17-3 at 63].  Balancing the three factors, the Court finds the continuing violation doctrine applies: Plaintiff's hostile work environment claim, to the extent she asserts one, is not time-barred.[4]

---

[4] The Court notes that Plaintiff's failure to "check" the continuing violation box on her charge of discrimination form does not preclude her bringing such claim before the Court so long as she alleged facts before the reviewing

### B.    *Equitable Modification: Discrimination and Retaliation Claims*

With regard to Plaintiff's discrimination and retaliation claims, the Fifth Circuit has found that, because the timely-filing requirement "is not a jurisdictional prerequisite, . . . it may be tolled by equitable modification."  *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).   Three "potential bases" exist for equitably tolling a claim in this context: "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the [relevant governmental agency's] misleading the plaintiff about his rights."  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003).   Whether or not the case presents one of these bases for tolling, equity provides only "a narrow exception . . . that should be 'applied sparingly.'"  *Phillips*, 658 F.3d at 457 (citing *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)); *see also Tolbert v. United States*, 916 F.2d 245, 249 n.1 (5th Cir. 1990) (noting in the Title VII context that permitting a plaintiff to "circumvent[] the administrative process" by permitting her to file before a court outside of the statutory period would "frustrate the ability of the agency to deal with complaints").

In the present case, Plaintiff neither alleges nor proves that any of the three bases for equitably tolling a claim exists.  Plaintiff asserts only that Defendant engaged in a "cumulative effort" through "discriminatory actions" such as "arduous and nonsensical growth plan requirements, . . . repeatedly suggesting that Plaintiff retire or take a lower paid position[,] . . . [and] repeatedly refer[ring] to Plaintiff's methods as 'old' and 'outdated'" in order to "establish

---

agency "sufficient to trigger a Commission investigation."  *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged.").   The Court evaluates *infra* whether Plaintiff alleges sufficient facts here (and, incidentally, whether she did so through her charge of discrimination).

. . . pretext" to fire her [Dkt. 20 at 8].  Plaintiff only otherwise points to her counsel's affidavit, discussed *supra*, to suggest she was not aware she had a claim against Defendant for its alleged unlawful employment actions.  *Id.* at 9.  None of these allegations (nor the evidence Plaintiff proffers in support thereof) demonstrates pendency of a suit between Plaintiff and Defendant in the wrong forum, Plaintiff's lack of awareness of the facts supporting her claim (or any intentional concealment of such facts on Defendant's part), or any agency's part in misleading Plaintiff regarding her rights.  *See Manning*, 332 F.3d at 880.  Given that Plaintiff provides no support for equitable modification of the limitations period, the Court finds such relief inappropriate here.  Accordingly, Plaintiff's discrimination and retaliation claims, to the extent they are based on any alleged unlawful employment actions that occurred on or before October 16, 2014, are time-barred, *see* 29 U.S.C. § 626(d)(1), as are her TCHRA claims relating to the same on or before February 13, 2015.

The Court notes that, while an employer's acts that are time-barred may not serve as a basis for an employee's claim under the ADEA or TCHRA, the employee still may point to those acts as background evidence of the employer's alleged unlawful employment practice that falls within the applicable limitations period.  *Morgan*, 536 U.S. at 114-15; *see also United Air Lines v. Evans*, 431 U.S. 553, (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.  It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences"); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (finding a court may "consider time-barred acts . . . insofar as they are relevant to the Defendant's motivation").

## II.        *Plaintiff's Age Discrimination Claims*

Defendant contends first that Plaintiff fails to raise a genuine issue of material fact regarding her age-related discrimination claim [Dkts. 16 at 21-23; 21 at 5-8].   Specifically, Defendant asserts Plaintiff fails to meet her burden of establishing a *prima facie* discrimination claim because she does not show a younger person or someone outside the protected class replaced her [Dkt. 21 at 5].   Moreover, Defendant asserts, Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff and Plaintiff fails to demonstrate these reasons constitute pretext [Dkts. 16 at 22-23; 21 at 5-8].   Plaintiff responds that she "has unquestionably met" the burden of proving her *prima facie* discrimination case, pointing to Coleman's testimony that Thompson now teaches her English Language Arts class, and further asserting that Defendant's proffered reasons for terminating her constitute pretext or that Plaintiff's age constituted a motivating factor [Dkt. 20 at 9-11].

Under the ADEA, an employer may neither (1) "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age" nor (2) "discriminate against any of [its] employees . . . because such individual[] . . . has opposed any practice made unlawful by this section, or because such individual[] . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]."   29 U.S.C. § 623(a), (d).   The ADEA provides a private right of action for persons aggrieved under its terms.   *Id.* § 626.   The Texas Labor Code likewise provides a private right of action to persons "claiming to be aggrieved by an unlawful employment practice" after receipt of "a notice of the right to file a civil action . . . ."   TEX. LAB. CODE ANN. §§ 21.201, 21.254; *see* §§ 21.051 (prohibiting, *inter alia*, age discrimination); 21.055 (prohibiting

retaliation). Although certain standards under each statute vary, courts "look to federal law to interpret the [TCHRA's] provisions." *AutoZone, Inc. v.* Reyes, 272 S.W.3d 588, 592 (Tex. 2008); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) (The Texas Supreme Court has "consistently held that . . . analogous federal statutes and the cases interpreting them guide [its] reading of the TCHRA."). Accordingly, a plaintiff who "produc[es] only circumstantial evidence of discriminatory animus . . . must negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973).]" *Martin v. Bayland, Inc.*, 181 F. App'x 422, 424 (5th Cir. 2006) (per curiam) (applying this framework in an ADEA/TCHRA case after finding that the remark "I think it's time to hang it up and you—for you to retire" did not constitute direct evidence of age discrimination); *see also Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (noting *McDonnell Douglas* framework applies under both the ADEA and the TCHRA). Given that Plaintiff proffers circumstantial rather than direct evidence in support of her allegations,[5] the Court applies the *McDonnell Douglas* framework where applicable.

Where, as here, the employee relies on circumstantial evidence of the employer's discriminatory intent, the *McDonnell Douglas* burden-shifting framework applies as follows:

---

[5] Plaintiff relies on circumstantial evidence to support her claims of age-related discrimination, retaliation, and hostile work environment [*see* Dkt. 20]. In particular, Plaintiff asserts that Coleman's comments about retirement and references to Plaintiff's teaching methods as "old" and "outdated," as well as his suggestion that she take a less stressful teaching aide position, supports her contentions that Defendant assigned her to growth plans and gave her negative reviews because of her age. *See id.* Plaintiff never asserts any of this directly evidences Defendant's alleged age-based discriminatory animus; instead, Plaintiff presents each piece of evidence, including Coleman's remarks, as "just one ingredient in the overall evidentiary mix[] . . . ." *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-77 (5th Cir. 2015) (discussing plaintiff's use of discriminatory remarks as circumstantial evidence of employer's alleged discriminatory animus). Indeed, none of the above constitutes direct evidence because "a [factfinder] would have to draw an inference from the evidence to come to [the] conclusion" that Defendant intended to discriminate against Plaintiff because of her age. *Thompson v. Wichita Falls Indep. Sch. Dist.*, No. CIV.A. 7:06CV191-R, 2007 WL 1893358, at *5 (N.D. Tex. June 29, 2007) (evaluating employer's "age-related remarks" as circumstantial evidence); *see also Martin*, 181 F. App'x at 423-24 ("Direct evidence is 'evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

> [T]he employee carries the initial burden of establishing a prima facie case of age discrimination. *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir.2005). If he succeeds, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment. *Id.* If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age.

*Miller*, 716 F.3d at 144 (applying the framework in an ADEA/TCHRA case).   Importantly, *McDonnell Douglas* merely provides an analytical framework for ADEA claims; an employee ultimately "'must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision'" in order to prevail.  *Fitzpatrick v. Pontotoc Cty.*, 612 F. App'x 770, 773 (5th Cir. 2015) (per curiam) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010), in turn quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).  Although the standards under the ADEA and TCHRA are the same throughout much of the analysis, the employee bears a lower burden of establishing that discrimination was a motivating factor in the employer's decision to take an adverse employment action on her TCHRA claims.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439-40 (5th Cir. 2012) (An employee asserting TCHRA claim can prove pretext by showing "either (1)  the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor.").  The Court turns first to Plaintiff's prima facie case.

### A.      *Plaintiff's Prima Facie Age Discrimination Case*

An employee must show she was (1) discharged, (2) qualified for the position from which she was discharged, (3) "within the protected class at the time of discharge"—i.e., above the age of forty—and (4) either (a) replaced by someone younger or outside the protected class or (b) "otherwise discharged because of [her] age." *Jackson v. Cal-W. Packaging Corp.*, 602

F.3d 374, 378 (5th Cir. 2010).   "To present a prima facie case takes 'only . . . a very minimal showing.'"   *McCreless v. Moore Bus. Forms Inc.*, 111 F.3d 893, at *4 (5th Cir. 1997) (per curiam) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

Here, Plaintiff demonstrates (and Defendant does not rebut) the first three elements of her prima facie case: (1) she was discharged because the Board "non-renewed her contract" [*see* Dkt. 20-3 at 266 (Coleman's deposition); (2) she was qualified for the position (Plaintiff had worked as a teacher for a number of years, receiving accolades throughout) [Dkt. 20-3 at 201-58 (positive annual appraisals through 2011, certifications, and awards)]; and (3) she was within the protected class because she was sixty-two years of age at the time Defendant terminated her employment [Dkt. 17-3 at 248].   Plaintiff asserts she also provides evidence that Defendant replaced her with someone younger or outside of the protected class, namely Thompson [Dkt. 20 at 9].   Defendant contends, however, that Plaintiff proffers no evidence of Thompson's age or even that Thompson replaced Plaintiff [Dkt. 21 at 5].   Assuming *arguendo* Defendant replaced Plaintiff with Thompson, the Court finds there is no evidence in the record that Thompson was younger than Plaintiff or that Thompson is outside Plaintiff's protected class [*see* Dkt. 20-3 at 266-67].   The only testimony/evidence proffered as to Thompson is summarized as follows: Coleman's testimony reflects that Thompson now teaches seventh grade English Language Arts and that she has worked for Defendant for "[t]wo or three years" after having previously worked as a teacher elsewhere [Dkt. 20-3 at 267].   Coleman testified that he believed "[Thompson] is not at the age of retirement[,]" and when asked, "[d]o you know how old . . . Thompson is?" Coleman replied "I do not."   *Id.*   These statements, viewed alongside other evidence in the record, demonstrate at best that, in Coleman's opinion, Thompson was younger (not at retirement age) than Plaintiff (who was) [*see id.*; Dkt. 20-3 at 260].   In the Fifth Circuit, however, an

employee must "show that [she] was replaced by [someone] sufficiently younger in the context of [her] employment to permit an inference of age discrimination." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). Without more information, the Court's hands are tied; it cannot find Thompson was "younger" than Plaintiff or that Thompson was outside the protected class. *See Silva v. Chertoff*, 512 F. Supp. 2d 792, 810 & n.91 (W.D. Tex. 2007) (rejecting employee's proffer of replacement to satisfy prima facie case where neither party had "direct[ed] the Court to any information concerning [the replacement's] age"). Because Plaintiff fails to show that Defendant replaced her with someone younger or with someone outside the protected class—i.e., someone under the age of forty—Plaintiff must show she was "otherwise discharged because of her age" in order to carry her prima facie case burden. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351 (5th Cir. 2007); *Silva*, 512 F. Supp. 2d at 810.

In determining whether an employee is "otherwise discharged because of . . . age[,]" courts consider the evidence the employee proffers in support of her discrimination claim generally. *See, e.g.*, *Goudeau*, 793 F.3d at 475-76; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352-53 (5th Cir.2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313-15 (5th Cir. 2004); *Berquist*, 500 F.3d at 351-52. Where the employee offers age-related workplace comments as evidence of discrimination at this stage, the employee must show "(1) discriminatory animus (2) on the part of the person [who] is either primarily responsible for the challenged employment action or by a person with influence over the relevant decisionmaker." *Goudeau*, 793 F.3d at 475-76 (citing *Reed*, 701 F.3d at 441). Comments that demonstrate discriminatory animus often reflect biased or stereotypical understandings about age. *See, e.g.*, *Machinchick*, 398 F.3d at 353 (finding comments in emails that employee "had a 'low motivation to adapt' to change" and that characterized employee "as 'inflexible,' 'not

adaptable,' and possessing a 'business-as-usual attitude'" could "support an inference of age discrimination"); *Rachid*, 376 F.3d at 313 (finding comments "easily establishe[d] a prima facie case" where supervisor "repeatedly made ageist comments to and about [employee]" and a coworker testified supervisor "suggested that [employee's] absence from a meeting was due to the fact that 'he's probably sleeping by [now] because of his age'"); *Bienkowski*, 851 F.2d at 1507 & n.4 (finding supervisor's comments on employee's "inability or willingness to 'adapt' to new systems in the department" and that employee "looked 'sharp' if he was going to look for another job" could "carry[] an age-based pejorative implication").  On the other hand, "facially-neutral" remarks or those which merely reference retirement do not reflect discriminatory animus.  *See Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868-69 (5th Cir. 2010) (per curiam) (determining at the prima facie stage that "[a]n employer's inquiry into an employee's age and retirement plans is not by itself evidence of discriminatory intent" and citing *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993), which evaluated like comments at the pretext stage); *see also Ng-A-Mann v. Sears, Roebuck & Co.*, 627 F. App'x 339, 342 (5th Cir. 2015) (per curiam) (finding employee's averment that supervisors "'brought up the subject [of his retirement] on multiple occasions'" did not "demonstrate that these comments were more than a reasonable inquiry into [the employee's] future plans"); *Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 352 (5th Cir. 2014) (per curiam) (supervisor's question about employee's age was "facially neutral" and thus "[did] not reflect *discriminatory* animus or animus at all"); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) (finding supervisor's comment during termination discussion that "I hope when I get to your age, somebody does the same thing for me" a "casual, facially-neutral remark").

Given that Plaintiff need only make a "minimal showing" in order to put forward a prima facie case, *see Nichols*, 81 F.3d at 41, the Court finds Plaintiff does so here.  Plaintiff points to, among others, Coleman's 2012 retirement comment, Coleman's offering Plaintiff a teaching aide position in 2014, Coleman's comments over the relevant period that Plaintiff's teaching methods were "old" or "outdated," Defendant's assigning Plaintiff to growth plans, and Defendant's negative reviews of Plaintiff beginning in 2012 as evidence of her age-related discrimination claim [*see* Dkt. 20].  Coleman's 2012 retirement remark is itself facially neutral, but considered alongside his allegedly persistent comments concerning Plaintiff's "outdated" or "old" teaching methods and the Parties' "sharp disagreements over the operative facts of [Plaintiff's] performance[,]" the Court finds Plaintiff carries her burden of demonstrating at this early, deferential stage, a prima facie case of age discrimination.  *See Bienkowski*, 851 F.2d at 1506 ("[W]e are unwilling to assume that indirect comments about . . . age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [the employee's] performance.").  Because Plaintiff demonstrates her prima facie case, the Court must consider Defendant's proffered reasons for non-renewing Plaintiff's contract and Plaintiff's allegations that such reasons constitute pretext (under the ADEA) or that her age also was a motivating factor (under the TCHRA).

### B.    *Legitimate, Non-Discriminatory Reasons*

Defendant asserts it non-renewed Plaintiff's contract because, *inter alia*, of Plaintiff's failures to "[1] remediate her performance deficiencies, [2] follow directives from . . . Coleman, [3] meet deadlines, and [4] improve her students' scores on the STAAR test" [Dkt. 16 at 22 (citing Dkt. 17-2 at 24-35) (the Board's "Findings of Fact and Conclusions of Law" regarding its decision to non-renew Plaintiff's contract); *see also* Dkt. 21 at 5-8].  The record supports

Defendant's alleged nondiscriminatory reasons for terminating Plaintiff's employment; again,

the Board indicated in its Findings of Fact and Conclusions of Law that it decided to non-renew

Plaintiff's teaching contract on the following bases:

- Plaintiff "failed to remediate her performance deficiencies as identified in her [appraisals]";
- Plaintiff "failed to remediate performance deficiencies as identified in her 2012 and 2014-2015 Growth Plans";
- Plaintiff "failed to consistently follow legitimate directives from her supervisor to meet all deadlines; tutor struggling students; provide engaging lessons; provide adequate feedback to students; to turn in tutoring, parent logs, and lesson plans on time; to create lesson plans with the requested information; request that her student complete bi-weekly STAAR-format compositions; and increase the amount of student critical thinking, [all of] which constitute[s] a reason for nonrenewal";
- Plaintiff's "inefficien[cy] and incompeten[ce] in the performance of her duties";
- Plaintiff's inability to "measure success by the progress of each student . . .";
- Plaintiff's failure to "cooperate with parents and others . . ."; and
- Plaintiff's "students' inadequate STAAR testing results for the past three years, [and her] students' [concomitant] . . . significant lack of progress[.]"

[Dkt. 17-2 at 34-35, as modified by Dkt. 17-3 at 37-38].  The Court finds these reasons satisfy

Defendant's minimal production burden.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 143 (2000).[6]

### C.      *Pretext and Discriminatory Animus as Motivating Factor*

Plaintiff argues that Defendant's proffered reasons constitute pretext and/or that

Defendant was, at least in part, motivated by age-based discriminatory animus [Dkt. 20 at 10-

11].   More specifically, Plaintiff claims (1) Defendant's interpretation of the STAAR test

statistics is either skewed or disingenuous, (2) the growth plans and negative appraisals, which

Plaintiff had difficulties satisfying, grew out of Defendant's intent to "cause Plaintiff to retire . . .

voluntarily[,]" rather than what Defendant identifies as Plaintiff's incompetence, and (3)

Coleman's remarks about retirement and Plaintiff's teaching methods, as well as his suggestion

---

[6] Defendant proffers the same reasons to combat Plaintiff's retaliation claim [Dkt. 16 at 24; 21 at 10].  Plaintiff makes the same allegations of pretext in support of her retaliation claim [Dkt. 20 at 12].  As a result, the Court considers these arguments only once.

that Plaintiff take a less stressful job, demonstrate Defendant's age-based discriminatory animus. *Id.*[7]

As a preliminary matter, neither of the first two arguments standing alone—regarding Defendant's interpretation of the STAAR tests and growth plans—can support Plaintiff's allegations of pretext or discriminatory motivation: they have relevance to Plaintiff's claims of age-based discrimination only when considered alongside Coleman's remarks toward Plaintiff. *Cf. Miller*, 716 F.3d at 144 (In TCHRA or ADEA case, Plaintiff ultimately bears the burden at the summary judgment stage "to prove either that the employer's proffered reason was not true— but was instead pretext for age discrimination—or that, even if the employer's reason is true, [she] was terminated because of [her] age."); *Reed*, 701 F.3d at 440 (upholding district court's finding that employee had failed to raise a genuine issue of material fact regarding age-based discriminatory animus and that summary judgment under ADEA and TCHRA was therefore appropriate). In other words, the operative question is whether Plaintiff was subjected to these measures and subsequently lost her job because of Defendant's alleged age-based discrimination: even assuming Defendant skewed the STAAR test results and placed Plaintiff on unfair growth plans, Plaintiff must still present evidence that raises the inference that Defendant did so because of her age (or was motivated to do so because of her age).

---

[7] Plaintiff also alleges she "was required to perform tasks that younger, less experienced teachers were not" [*see* Dkt. 20 at 10-11]. After thoroughly reviewing the record, however, the Court finds no evidence that would permit the inference that younger, less experienced teachers were subjected to less rigorous performance standards than Plaintiff. The record shows that Defendant placed Plaintiff on a growth plan and that Plaintiff's annual appraisals began declining in 2012, but the record does not reveal that any other, younger teachers were (or were not) placed on growth plans during the relevant time period or that any received worse annual appraisals than before [*see* Dkt. 20-3 at 264-65 (noting that at least two other teacher were on a formal growth plan, but providing no details as to those other teachers' ages or the time period they were on the growth plan)]. Although Plaintiff testified at deposition about one instance where Defendant disciplined her for leaving a symposium early but did not discipline four other teachers for doing the same [Dkt. 17-3 at 77], Plaintiff proffers no evidence of the other four teachers' respective ages. As noted *supra*, without evidence of a potential comparator's age, the Court cannot find any question of fact regarding age-based discrimination. *See Silva*, 512 F. Supp. 2d at 810 & n.91.

Here, although neither the STAAR test results nor Plaintiff's growth plans and/or increasingly negative annual appraisals themselves provide support for Plaintiff's age discrimination claim, the Court may evaluate them in tandem with Coleman's remarks over the relevant period to determine whether Plaintiff raises a genuine issue of material fact regarding pretext or discriminatory motivating factor.   *See Goudeau*, 793 F.3d at 475 (considering purportedly discriminatory remarks as "one ingredient in the overall evidentiary mix").   The Court accordingly analyzes Coleman's comments under *Reed*'s standard for remarks proffered as circumstantial evidence of age-based discrimination alongside Plaintiff's other evidence to determine whether Plaintiff raises a genuine issue of material fact regarding pretext and/or discriminatory motivation.   Again, *Reed* requires that a supervisor's or coworker's comments "show (1) discriminatory animus (2) on the part of the person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker" in order to amount to circumstantial evidence of the employer's discriminatory intent.   *Reed*, 701 F.3d at 441.[8]

### *1.* *Pretext*

At the summary judgment stage, an employee "must substantiate [her] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).   The employee "must rebut each nondiscriminatory reason articulated by the employer" in order to meet her burden of establishing pretext. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).   An employee "may

---

[8] The Court assumes that, given his role in recommending Plaintiff's discharge and his heavy involvement in her annual appraisals, Plaintiff raises a genuine issue of material fact regarding whether Coleman is a person with influence or leverage over the relevant decisionmaker such that the only question the Court must consider is whether his comments demonstrate Defendant's alleged discriminatory animus.   *See Thompson*, 2007 WL 1893358, at *5 (finding a jury should answer the question whether a person without authority to make the adverse employment decision has the requisite level of influence over the ultimate decisionmaker).

establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (internal quotations omitted).   "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578.   "Summary judgment is inappropriate[,]" however, "if the evidence taken as a whole . . . creates a reasonable inference that [age] was a determinative factor in the actions of which [the employee] complains." *Cf. Isaac v. Ean Holdings, LLC*, No. 6:15-CV-681, 2016 WL 4194569, at *6 (E.D. Tex. Aug. 9, 2016).

Regarding Coleman's comments, "musings about eventual retirement" and questions concerning an employee's age generally "do not evidence discriminatory intent." *Moore*, 990 F.2d at 818 (finding supervisor's questions regarding the age of his crew were "reasonable inquiries" aimed at "gaug[ing] the anticipated longevity of his crew"); *see also Kilgore v. Brookeland Indep. Sch. Dist.*, 538 F. App'x 476-77 (5th Cir. 2013) (per curiam) (upholding district court's finding that a "superintendent's comment concerning [the employee's] retirement eligibility" was insufficient to create a genuine issue of material fact at the pretext stage); *Rexses*, 401 F. App'x at 868-69; *Ng-A-Mann*, 627 F. App'x at 342; *Kean*, 577 F. App'x at 352; *McCreless*, 111 F.3d 893, at *4 (finding a coworker's comment "inform[ing] [employee] of the retirement package and [telling employee] he should 'consider taking it' and that if [coworker] were [in employee's] circumstances, 'he would take it'" was "merely a casual, facially-neutral remark"); *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (finding personnel director's comment "it's just that you've reached that age and years of service that we can bridge you to retirement" was "simply recogniz[ing] a fact concerning [the employee's]

seniority" and did not "demonstrate age bias" or "imply seniority was the reason for discharge");
*Bodenheimer*, 5 F.3d at 958.   But "persistent supervisor comments about retirement can
compound other evidence that a proffered nondiscriminatory reason for terminating an employee
was pretextual." *Ng-A-Mann*, 627 F. App'x at 342.

In the present case, Plaintiff's testimony reveals three specific instances in which
Coleman mentioned retirement to Plaintiff—once in May 2012, when Coleman asked Plaintiff
about her pension and suggested she consider retiring, again in May 2014, and again just before
he recommended to Spies that the Board non-renew Plaintiff's teaching contract—but also
indicates more generally that Coleman "was always asking [Plaintiff] if [she] was going to
retire" [Dkt. 17-3 at 55, 67-68, 75].  Moreover, Plaintiff testified that "[p]retty much every time"
she and Coleman would meet from the spring 2012 semester and onward, Coleman would
comment on Plaintiff's "outdated" teaching methods and would suggest that she instead use
"new ways" of teaching.  *Id.* at 55; *see Bienkowski*, 851 F.2d 1507 & n.4 (considering supervisor
comments on employee's "inability or willingness to 'adapt' to new systems in the department"
and noting "we are unwilling to assume that indirect comments about [the employee's] age and
adaptability are not possibly probative of an unlawful discriminatory intent, given the parties'
sharp disagreements over the operative facts of [the employee's] performance").  Read in a light
most favorable to Plaintiff, Plaintiff's evidence of Coleman's comments regarding Plaintiff's
suggested retirement appear persistent. *see Ng-A-Mann*, 627 F. App'x at 342.

Moreover, Defendant argues Coleman first approached Plaintiff about retirement because
"it came to [his] attention that [she] might have plans to retire from teaching" [Dkt. 17-3 at 45;
*see also id.* at 76 (indicating another teacher told Plaintiff "he [had] heard that [Plaintiff] was
retiring . . . from a parent . . . .")].  However, Plaintiff's testimony indicates that, while she likely

attended a retirement seminar around the time, *id.* at 56, she had previously attended such seminars "over the years[,]" *id.*, Coleman apparently had not inquired after those seminars regarding whether Plaintiff planned to retire, and, in any event, Plaintiff argues to conclude she planned to retire because she attended such a seminar would be improper on Coleman's part, *id.* at 57.   Read in a light most favorable to Plaintiff, Coleman's persistent inquiries into whether Plaintiff intended to retire lend support to Plaintiff's theory of age-based discriminatory animus. *See Ng-A-Mann*, 627 F. App'x at 342.   Although Coleman's affidavit reflects a concern for Plaintiff's purportedly poor performance, as well as a managerial interest in determining whether Plaintiff would remain working as a teacher [Dkt. 17-3 at 46-47], his allegedly ongoing commentary on Plaintiff's "outdated" teaching methods and repeated, pointed inquiries about Plaintiff's retirement plans could lead a reasonable juror to believe Defendant harbored age-based discriminatory animus but for which Defendant would not have decided to non-renew Plaintiff's contract.   *See Bienkowski*, 851 F.2d 1507 & n.4; *Machinchick*, 398 F.3d at 353.   In context, Coleman's statements amount to something more than mere "musings" about retirement or a dry recitation of the fact of Plaintiff's age and/or eligibility for retirement.   *Cf., e.g., Moore*, 990 F.2d at 818 (finding newly hired supervisor's questions about employees' ages and not directed at employees were insufficient to establish pretext); *Kilgore*, 538 F. App'x 476-77 (finding a superintendent's isolated comment the employee was "eligible for retirement" simply stated a fact and constituted neither direct nor circumstantial evidence of discrimination); *McCreless*, 111 F.3d 893, at *4 (finding supervisor's single comment about taking a retirement package and employee's averment omitting details about other supposed harassment about supervisors pressuring him to retire insufficient to establish pretext).

Moreover, although Coleman avers that Plaintiff struggled both to meet the requirements of the growth plans to which Defendant assigned Plaintiff and to prepare students adequately for the STAAR test each year [Dkt. 17-3 at 45-48; *see, e.g.*, Dkts. 17 at 13-24 (Plaintiff's students' STAAR scores); 25-40 (Plaintiff's 2012 appraisal and correspondence between she and Coleman); 45-47 (email from Coleman to Plaintiff explaining deficient STAAR scores); 17-1 (documenting Plaintiff's growth plan compliance); 17-2 at 1-18 (same)], Plaintiff casts sufficient doubt on these proffered reasons to raise a genuine issue of material fact as to pretext. Indeed, Plaintiff attempted at deposition to comment on the STAAR scores [Dkt. 17-3 at 60] and vehemently argued in briefing—relying on Defendant's proffered records of Plaintiff's students' STAAR scores for the relevant period—that Defendant had mischaracterized her students' performance as compared to that of students statewide [Dkt. 20 at 10-11]. She also contends the growth plans were designed to make her fail and to force her to voluntarily retire (and/or take the lesser-paid aide position) [*e.g.*, Dkt. 17-3 at 80]. Defendant concedes that, even though the stated "goal of the growth plan is to improve teacher performance[,]" each teacher placed on a formal growth plan by Defendant "either resigned or left" without completing the plan and that "on a RIF [Coleman understood] that the first people who get RIF'd can be the people who are on growth plans" [Dkt. 20-3 at 264-65]. Read in a light most favorable to Plaintiff, the record evidence raises a genuine issue of material fact regarding whether Plaintiff's assignment to the growth plans (by Coleman), her negative reviews (by Coleman), and the allegedly skewed STAAR statistics—all bases upon which the Board decided to non-renew Plaintiff's contract— grew out of Defendant's age-based discriminatory animus.[9]

---

[9] In addition to Plaintiff's negative appraisals, failure to complete her growth plans, and allegedly poor STAAR results, the Board's decision to non-renew cites Plaintiff's failure to consistently follow her supervisor's directives (and lists many of those directives), Plaintiff's "inefficie[cy] and incompeten[ce] in the performance of her duties[,]" her inability to "measure success by the progress of each student[,]" and her failure to "cooperate with parents and

"[G]iven the [P]arties' sharp disagreement over the operative facts of [Plaintiff's] performance[,]" particularly in adequately preparing her students for the STAAR test, the Court is "unwilling to assume that [Coleman's] indirect comments about [Plaintiff's] age and adaptability are not possibly probative of an unlawful discriminatory intent[.]" *Bienkowski*, 851 F.2d at 1507.   Summary judgment is inappropriate when there is evidence that could allow a reasonable juror to conclude that a protected characteristic caused Defendant's employment decision or that the employer's proffered reason(s) for the decision are unworthy of credence. *See Brisco v. Home State Ins. Grp., Inc.*, No. CIV.A.3:04 CV 0610 P, 2005 WL 1164183, at *10-11 (N.D. Tex. May 16, 2005) (noting a plaintiff may show discriminatory animus either by evidencing the animus itself or by showing the reasons proffered are unworthy of credence).   In light of the foregoing, the Court finds Plaintiff raises a genuine issue of material fact regarding whether Defendant would have decided to non-renew her teaching contract but for her age.[10] Accordingly, Plaintiff's age discrimination claim under the ADEA should proceed to trial.

## 2.   *Discriminatory Motivating Factor*

Because the Court has determined Plaintiff's claims survive summary judgment under the higher ADEA standard for pretext, Plaintiff's claims under the TCHRA survive, as well.   An employee can survive summary judgment under the "motivating factor" standard by showing that the employer's reasons for its adverse employment action, even if true, are but some of the reasons for the action, and that another motivating factor is the employee's age.   *Cf. Rachid*, 376 F.3d at 312.   In the present case, Plaintiff asserts that her age motivated Defendant, at least in

---

others . . ." [Dkt. 17-2 at 34-35, as modified by Dkt. 17-3 at 37-38].   Each of these alleged deficiencies relate to and are reflected in Plaintiff's negative appraisals and growth plan reviews [*see, e.g.*, Dkt.17-1 at 50-54 (annual appraisal for 2013-2014 school year);  17-2 at 11-18 (review of growth plan from April 28, 2014 to February 27, 2015)].

[10] Plaintiff also testified that she "was being written up for parts of [her] growth plan that [she] could not complete either because of [her] injury or because it could not be done within the constraints of the time period given to complete them" [Dkt. 17-3 at 76].   Plaintiff suffered the referenced injury on the job on October 3, 2014.   *Id.* at 34.   The Court reiterates that Plaintiff makes no claim of disability discrimination here.

part, to place her on growth plans, give her increasingly negative annual reviews, and ultimately to non-renew her teaching contract.  The Court finds that Plaintiff raises a genuine issue of material fact on this claim: given its analysis above, which concludes a reasonable juror could conclude Plaintiff's age was the but-for cause of her termination, the Court is compelled to find a reasonable juror could conclude Plaintiff's age was but one of the motivating factors for Defendant's decision.  *See Reed*, 701 F.3d at 439-40 (indicating the TCHRA's standard at this third analytical stage is lower).  Accordingly, Plaintiff's age discrimination claim under the TCHRA should also proceed to trial.

### III.    *Retaliation Claim*

Defendant also contends that Plaintiff fails to raise a genuine issue of material fact regarding her age-related retaliation claim [Dkts. 16 at 23-25; 21 at 8-10].  Specifically, Defendant asserts Plaintiff fails to meet her burden of establishing a prima facie retaliation claim because she does not show she engaged in a protected activity or that a causal link exists between any alleged protected activity and any alleged adverse employment action [Dkt. 21 at 8-10].  Moreover, Defendant asserts, Defendant had legitimate, non-retaliatory reasons for terminating Plaintiff and Plaintiff fails to demonstrate these reasons constitute pretext [Dkt. 16 at 24-25].  Plaintiff responds that she demonstrates a prima facie case of retaliation as well as pretext because the evidence shows that, despite Plaintiff's "history of positive reviews[,] . . . [o]nce Plaintiff rebuffed Defendant's suggestion that she retire from teaching, Defendant began to attempt to wear her down with criticism[] . . . [and] terminated [her employment] in retaliation for her refusal to retire" [Dkt. 20 at 12].

Again, the ADEA and TCHRA make discriminatory, age-related retaliation unlawful. 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of [its]

employees . . . because such individual[] . . . has opposed any practice made unlawful by this section, or because such individual[] . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]."); Tᴇx. Lᴀʙ. Cᴏᴅᴇ Aɴɴ. § 21.055 (prohibiting retaliation).    The same *McDonnell Douglas* burden-shifting framework applies in the retaliation context as in the discrimination context, such that an employee first must "establish a prima facie case of unlawful retaliation by proving (1) that she engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action" before the employer need proffer any reasons for the adverse employment action.  *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1998); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) ("[T]he ADEA protects employees from retaliation for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA."); *see also Medina*, 238 F.3d at 684 n.2 (noting Texas state courts "have articulated the same elements for establishing a prima facie case of retaliation as federal courts" and that, though they "have not fleshed out the remaining steps of the analysis[,]" they "have said that they would look to interpretation of federal civil rights law in doing so").

### A.    *Protected Activity*

An employee engages in a protected activity where she opposes an activity she reasonably believes constitutes unlawful discrimination.  *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348-49 (5th Cir. 2007)); *see also Turner*, 476 F.3d at 348-49 (finding African-American secretary "could not have reasonably believed" that her white supervisor's comments

about secretary's work with "ghetto children" "constituted an unlawful employment practice in and of themselves"). Although "[m]agic words are not required, . . . protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown*, 406 F. App'x at 840. Where complaints to coworkers or supervisors "[are] not sufficiently clear or detailed for a reasonable employer to understand them, in light of both content and context, as an assertion of rights protected by the ADEA and a call for the protection of such rights[,]" such complaints "do not constitute protected activity . . . ." *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 674 (S.D. Tex. 2013). In *Paulissen*, for example, the employee merely told her employer that another employee had "made age-related comments that made her uncomfortable, and asked for advice on how to improve her working relationship with [that employee and others]." *Id.* at 674-75. In so doing, the court found that the employee "neither complained of a violation of the ADEA nor gave [her employer] fair notice that she was asserting rights protected by the ADEA and calling for their protection." *Id.* at 675.

Here, Plaintiff alleges her refusal to retire from teaching (at Coleman's suggestion) constitutes a protected activity [Dkt. 20 at 12]. Plaintiff's testimony reveals, however, that she merely rebuffed Coleman any time the topic arose, never alerting him to any belief that his suggestions (or any other behavior) constituted unlawful discrimination [Dkt. 17-3 at 55 (Coleman suggests and Plaintiff refuses to retire, representing to Coleman that she supports herself and cannot afford to retire), 63 (Coleman suggests and Plaintiff refuses demotion to teaching aide position, representing again she could not afford the lower income)]. *See, e.g.*, *Brown*, 406 F. App'x at 840; *Paulissen*, 942 F. Supp. 2d at 674. Furthermore, Plaintiff admits she only ever complained about purported age discrimination to Wichers, a non-supervisor and colleague of Plaintiff's who taught science classes, and indicates only that they discussed that

Plaintiff "was put on a growth plan" and needed to "use newer methods of teaching" [Dkt. 17-3 at 55,63, 68].   Plaintiff does not allege or show that she "complained of a violation of the ADEA" to Wichers, nor that she provided Defendant—through Coleman or some other member of the administration—"fair notice that she was asserting rights protected by the ADEA and calling for their protection."   *See Paulissen*, 942 F. Supp. 2d at 674-75.[11]   Even had Plaintiff made such statements to Coleman directly, Plaintiff does not show the statements would have alerted Defendant to Plaintiff's belief that Defendant had engaged in discrimination.   *See Brown*, 406 F. App'x at 840.   Accordingly, the Court finds that Plaintiff fails to show she engaged in a protected activity so as to establish a prima facie case of retaliation.

---

[11] Reading the record in the light most favorable to Plaintiff, Plaintiff first complained of a potential ADEA violation to her counsel and, at that, only at some point after the fall of 2014 [*see* Dkt. 20-3 at 268].  Plaintiff points the Court to no evidence to support a claim that she notified *Defendant* of any perceived violation of the ADEA prior to its decision to non-renew her contract.

### B.      Causal Connection

The Court next addresses Defendants' assertion that no causal connection exists.  To demonstrate causation in the retaliation context, a plaintiff must show that her employer would not have committed the complained-of employment action "but for" his protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *see also Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 333 (5th Cir. 2014).  Fifth Circuit precedent reflects that, at the prima facie stage, the test for establishing a causal connection is not particularly stringent, but the plaintiff must produce some evidence of this required "but-for" cause. *Ackel v. Nat'l Commc'n, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  Additionally, "if the only evidence of a causal link is 'mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action,' then 'the temporal proximity must be very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).  If an employee is relying on close temporal proximity to establish the causal connection, the employee must also produce "evidence of knowledge of the protected activity on the part of the decision maker." *Ramirez v. Gonzalez*, 225 F. App'x 203, 210 (5th Cir. 2007).

Under these standards, the Court's finding *supra* that Plaintiff did not engage in any protected activity prior to non-renewal of her contract—the adverse employment action here in issue—forecloses Plaintiff's allegation that a causal connection exists between the non-renewal and some protected activity.  Although Coleman undoubtedly knew that Plaintiff had refused to retire and could have influenced the Board (the ultimate decisionmaker) through his recommendation to Spies that Plaintiff's contract be non-renewed, Plaintiff's refusal to retire does not itself constitute a protected activity that could have caused the non-renewal.  Accordingly, Plaintiff's ADEA and TCHRA retaliation claims should be dismissed.

## IV.     *Hostile Work Environment Claim*

Defendant argues—and Plaintiff does not dispute[12]—that Plaintiff fails to establish a hostile work environment claim [Dkt. 16 at 25-27; 21 at 10-11].  In light of Plaintiff's failure to articulate argument or to point to evidence in support of this claim, the Court relies on Defendant's characterization of Plaintiff's claim, which Defendant appears to glean from Plaintiff's own testimony:

> In order to support her hostile work environment claim, Plaintiff points to the following actions: [1] being put on her Growth Plan in the fall of 2012; [2] being subjected to six walkthroughs in a six week period in the fall of 2012; [3] being offered an aide position in the spring of 2013; [4] being asked if she was going to retire during the 2013/2014 school year; [5] being put on a Growth Plan in the spring of 2014; [6] being written up for not completing her second Growth Plan in the fall of 2014; and [7] having to complete her second Growth Plan.

[Dkt. 16 at 25 (citing Plaintiff's testimony)].  The Court considers whether this testimony suffice to demonstrate that Defendant subjected Plaintiff to a hostile work environment.

The Fifth Circuit only recently recognized the hostile work environment cause of action under the ADEA.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).  Under *Dediol*, an employee "advances such a claim by establishing that (1) [she] was over the age of 40; (2) [she] was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer."  *Id.*  The *Dediol* court expanded further upon the third element:

> In order to satisfy the third element of a prima facie case of hostile work environment, a plaintiff must demonstrate that the harassment was objectively

---

[12] Failure to brief or raise issues in responsive briefing can be fatal.  *Whitmire v. Terex Telelect, Inc.*, 390 F. Supp. 2d 540, 548 (citing *Bursztajn v. United States*, 367 F.3d 485, 491 (5th Cir. 2004); *Scales v. Slater*, 181 F.3d 703, 709 n.5 (5th Cir. 1999); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991)).  Nevertheless, the Court evaluates Plaintiff's hostile work environment claim herein but notes it will not "sift through the record in search of evidence to support [Plaintiff's] opposition to summary judgment" on this claim.  *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010).

unreasonable. *Id.* A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir.2009). Moreover, the complained-of conduct must be both objectively and subjectively offensive. *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir.2007). This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. Id. To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

*Id.* Where coworker or supervisor comments form part of the alleged harassment, the frequency and severity factors blend together: courts must consider "whether the relationship between the frequency of the comments and their severity create[s] a genuine issue of material fact precluding summary judgment." *Id.* at 442; *see also Morgan*, 536 U.S. at 116 (noting that "[i]n determining whether an actionable hostile work environment exists, we look to 'all the circumstances'"). In any case, the U.S. Supreme Court "ha[s] made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (Title VII context); *see also Hayatavoudi v. La. Sys. Bd. of Trs.*, 240 F.3d 1073, at *3 n.7 (5th Cir. 2000) (table op.) (noting that, although *Faragher* dealt with sexual harassment, "we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment"); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) ("The legal standard for workplace harassment in this circuit is . . . high."). The question is whether the employer's actions "would disturb 'a reasonable person in [the employee's] position, considering all the circumstances.'" *Nadeau v. Echostar*, No. EP–12–CV–433–KC, 2013 WL 5874279, at *31 (W.D. Tex. Oct. 20, 2013) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 775, 788 (1998)).

In the present case, Plaintiff's testimony does not demonstrate a hostile work environment. To begin, the alleged age-based harassment—presumably Coleman's remarks pertaining to Plaintiff's teaching methods and/or retirement, as well as Defendant's placing Plaintiff on growth plans—does not meet the "high" standard for legal harassment outline by the Fifth Circuit. *See Gowesky*, 321 F.3d at 509. Although the hostile work environment claim "is intended to protect classes of workers who have historically been treated unequally in the workplace[,]" such as the elderly, it "is not intended to create a 'general civility code' that prohibits any and all workplace interactions that a worker could find rude or discourteous." *Nadeau*, 2013 WL 5874279, at *34. In other words, the Defendant must have treated Plaintiff "poorly on the basis of age" in order for the Court to find actionable harassment. *Id.* As explained *supra*, Coleman's comments are the only evidence Plaintiff proffers in support of her claims of *age-based* discrimination and/or harassment. *See, e.g.*, *Miller*, 716 F.3d at 144 (noting the operative question in discrimination cases is whether the employer terminated the employee "because of" age). These comments simply do not meet the high standard for harassment in this circuit. *Compare Gowesky*, 321 F.3d at 510 (upholding finding of no actionable harassment in disability case where supervisor "expressed his unwillingness to be treated by a dentist infected with hepatitis C or to allow [the employee] to suture his child" because the "comments [were] not nearly insensitive" enough), *with Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236-37 (5th Cir. 2001) (upholding finding of actionable harassment in disability case where "almost immediately after [a colleague] discovered" the employee was HIV-positive, the colleague "would no longer go to lunch with [the employee,] ceased socializing with [the employee,] . . . began intercepting [the employer's] telephone calls, eavesdropping on [the employee's] conversations, and hovering around [the employee's] desk" all while, among other

things, the employee "was required to undergo four random drug tests within a one-week period").

Moreover, although Plaintiff's testimony demonstrates the harassment was subjectively offensive, i.e., offensive to her, *see Dediol*, 655 F.3d at 441 (finding comments subjectively offensive where employee indicated he could not work under the conditions and ultimately quit his job), it falls far short of establishing the sort of "extreme" circumstances that would amount to a hostile work environment under the law.  *See, e.g.*, *Nadeau*, 2013 WL 5874279, at *31-32 (collecting cases and determining employee failed to establish third element where employee did not allege or show she was physically threatened or received any inappropriate physical contact, only received one directed insult, and otherwise dealt with only trial annoyances "that would not disturb the average person" despite that employer once made the employee miss a doctor's appointment); *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 490 (finding, where employee testified "retirement would come up in 'casual conversation'" and where employee "voluntarily attended retirement planning classes" that employee's case fell "far short of establishing a genuine issue of material fact"); *Herm v. Union Carbide Corp.*, No. 4:08-CV-2272, 2009 WL 7326067, at *4 (S.D. Tex. Sept. 1, 2009) ("[T]he issuing of an unsatisfactory evaluation resulting in a performance improvement plan does not constitute a hostile work environment."); *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (per curiam) (finding "careful monitoring of job performance[,] . . . absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment").  Aside from Coleman's comments discussed *supra*, Plaintiff relies wholly upon Defendant's placing her on growth plans and the stresses arising out of those in order to show Defendant subjected her to a hostile work environment; this showing plainly does not suffice under the cited authorities.  *See Herm*, 2009 WL 7326067, at

*4; *Ellis*, 246 F. App'x at 871.   Accordingly, the Court finds Plaintiff fails to raise a genuine issue of material fact on her hostile work environment claim.   Plaintiff's hostile work environment claim should be dismissed.

### V.   *Failure to Mitigate*

Given that Plaintiff raises a genuine issue of material fact as to her age-related discrimination claims, Plaintiff presents a potentially viable claim for damages under the ADEA and/or TCHRA.   Each of these statutes permits a successful plaintiff to obtain back- and/or front-pay as a result of discriminatory termination (here, non-renewal) of employment.   29 U.S.C. § 626(b), (c); TEX. LAB. CODE ANN. § 21.2585.

To recover such damages, a plaintiff must mitigate her damages by "us[ing]'reasonable diligence to obtain substantially equivalent employment.'"   *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998)); *see also City of Laredo v. Rodriguez*, 791 S.W.2d 567, 571-72 (Tex. App.—San Antonio 1990, writ den'd) (noting an employee wrongfully discharged "cannot recover for losses which, in the exercises of reasonable diligence, [s]he could have avoided" under the TCHRA by seeking "other employment").   According to the Fifth Circuit, "[s]ubstantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the . . . claimant has been discriminatorily terminated."   *West*, 330 F.3d at 393.   Although the employer bears the burden of proving the plaintiff failed to mitigate—by showing "substantially equivalent work was available and that the former employee did not exercise reasonable diligence to obtain it"—where the employer shows the plaintiff has made no reasonable efforts to secure work, the employer need not show "substantially equivalent work" was available.   *See id.*;

*Rodriguez*, 791 S.W.2d at 572. Indeed, "'[a] plaintiff may not simply abandon [her] job search and continue to recover back pay.'" *West*, 330 F.3d at 393 (citing *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989)); *see also Rodriguez*, 791 S.W.2d at 572 (finding that evidence showing the "[employee] made no effort at obtaining other employment" for certain periods after termination "support[ed] the trial court's conclusion that appellee failed to exercise reasonable diligence in seeking to mitigate his damages for such periods of time"). Even where a plaintiff has in some sense sought employment, the plaintiff's failure to reasonably maintain the search or, once secured, the job signals a failure to mitigate. *See, e.g.*, *Hansard*, 865 F.2d at 1468 (denying back pay where employee searched for work for four years, then stopped and began selling items part-time at a flea market for a year, then "stopped looking for work altogether and began receiving Social Security early retirement benefits"); *Scudiero v. Radio One of Tex. II, LLC*, No. 4:12-CV-1088, 2015 WL 6859146, at *17 (S.D. Tex. Sept. 30, 2015) (denying front pay where employee met with a few contacts from time-to-time only for about a month, never submitted an application or resume to anyone in his industry in the relevant markets, and started his own business for substantially lower pay); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir.1996) (denying pay where employee "'act[ed] in such a manner that caused his involuntary termination' from the job he obtained after being discharged . . .").

   In the present case, Plaintiff failed to mitigate her damages under these standards. As a preliminary matter, Defendant shows that Plaintiff made no reasonable efforts to secure work after Defendant non-renewed her contract, [Dkt. 17-3 at 98 (interrogatory answer admitting "Plaintiff has not sought employment since Defendant took negative . . . employment action against her . . . .")]. Plaintiff admits "Defendant is correct in asserting that Plaintiff has not

sought employment since Defendant took adverse employment action against her" but asserts she has not done so because of "the intense criticism she felt from Defendant[,]" which she claims "led to medical problems" for which she has taken hiatus [Dkt. 20 at 12].   Plaintiff directs the Court to no cases to support the proposition that the stress and/or hesitance to seek other work caused by an adverse employment action relieves her of her duty to seek other employment, nor has the Court discovered any such cases in its own research.   Furthermore, the Fifth Circuit reversed a district court's award of back pay where the plaintiff, after attempting once to secure another job, stopped when he unilaterally determined the job search would be pointless:

> Feeling that a job search would be futile, Johnston explained "I don't feel like a man that's 59 years old and has had one lung and emphysema and bronchial trouble, just one eye, and not much education that there's not much need in me looking for a job." We express no opinion whether Johnston's understandable doubts about his employment prospects would have proved valid had he actually searched for a job. . . .
> After this initial inquiry, Johnston did not try to obtain other employment and, thus, did not fulfill his duty to exercise reasonable diligence to mitigate his damages.

*Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1579 & n.3 (5th Cir. 1989). Likewise here, Plaintiff has unilaterally determined she should not (or cannot successfully) seek similar employment [Dkt. 20 at 12-13].   This amounts to a failure to mitigate damages, which precludes Plaintiff's recovery of either front- or back-pay.   *See West*, 330 F.3d at 393; *Rodriguez*, 791 S.W.2d at 572.   Accordingly, the Court finds Defendant's Motion for Summary Judgment as to Plaintiff's failure to mitigate should be granted.

## CONCLUSION

For the foregoing reasons, the Court finds Defendant's Motion for Summary Judgment [Dkt. 16] should be **GRANTED IN PART AND DENIED IN PART**.  Defendant's Motion for Summary Judgment should be **DENIED** as to Plaintiff's age discrimination claims under the ADEA and TCHRA and should be **GRANTED** as to Plaintiff's retaliation, hostile work environment, and front- and back-pay claims under same.  Accordingly,

It is therefore **ORDERED** that Defendant Van Alstyne Independent School District's Motion for Summary Judgment [Dkt. 16] is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

**SIGNED this 8th day of January, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE